

FILED & ENTERED

FEB 07 2017

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY romero    DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# RIVERSIDE DIVISION

| | |
|---|---|
| In re:<br><br>Roderick E. Clignett<br><br>Involuntary Debtor(s). | Case No: 6: 16-bk-18842-MH<br><br>Chapter 7 (Involuntary)<br><br>**MEMORANDUM DECISION AND ORDER GRANTING DEBTOR'S MOTION TO DISMISS INVOLUNTARY BANKRUPTCY PETITION AND RETAINING JURISDICTION UNDER 11 U.S.C. § 303(I)** |

## BACKGROUND

On October 3, 2016, a Chapter 7 involuntary petition was filed against Roderick Clignett ("Debtor") by Victor Salinas ("Salinas"). On October 13, 2016, summons service was executed. On November 2, 2016, Debtor filed a motion to (1) dismiss involuntary bankruptcy petition under FRCP 12: or in the alternative (2) set bond. On November 23, 2016, Salinas filed his opposition. On November 28, 2016, Salinas filed an addendum to the petition. On November 30, 2016, Debtor filed his reply. On December 7, 2016, the Court held a hearing and indicated that it was inclined to dismiss the petition. The Court continued the hearing, however, to allow for supplemental briefing on the topic of fees and costs pursuant to 11 U.S.C. § 303(i). On December 28, 2016, Debtor filed a brief in support of an order pursuant to 11 U.S.C. § 303(i) for damages, punitive damages, costs and attorneys fees. On January 11, 2017, Salinas filed an opposition to Debtor's brief and to the original motion. On January 18, 2017, Debtor filed a reply.

## FACTUAL BACKGROUND

Victor Salinas is alleged to be the son-in-law of Don San Angelo ("San Angelo"). San Angelo filed a state court case against Debtor in November 2008 for fraud, conversion and violations of the Corporate Securities Act. On August 18, 2011, judgment was entered against Debtor in the amount of $253,159.84. On October 19, 2011, San Angelo recorded an abstract of judgment.

In November 2012, Debtor and San Angelo worked out a settlement whereby Debtor would pay San Angelo $2250 bi-weekly, plus 75% of any net monies Debtor earned in excess of $10,000 per month. Debtor also transferred title to a time-share property in Lake Tahoe for which Debtor was credited $20,000. Debtor made payments for a short time, but lost his job and did not make any further payments.

On September 4, 2013, San Angelo allegedly sold the judgment to his son-in-law for $30,000. Debtor alleges that San Angelo's former counsel, Robert Schauer, then filed suit against San Angelo for fraudulently transferring the judgment, although no court records or case information is provided by Debtor.

San Angelo filed bankruptcy on January 31, 2014. San Angelo did not list the judgment, the sale of the judgment, or the lawsuit by his counsel in the petition. San Angelo received a discharge on May 12, 2014.

Shortly after obtaining a discharge, San Angelo allegedly reacquired the judgment from his son-in-law. According to Debtor, San Angelo attempted to sell the debt to debt collectors, but was repeatedly turned down after they discovered "San Angelo had lied on the bankruptcy schedules by failing to list the Judgment."

On April 28, 2015, San Angelo filed another state court action against Debtor for breaching the settlement of the first judgment. This lawsuit was scheduled for a mandatory settlement conference on October 26, 2016, and for trial on November 7, 2016, in San Bernardino Superior Court, but was stayed by the commencement of the involuntary petition.

San Angelo filed a skeletal involuntary petition on October 3, 2016. Debtor filed a motion to dismiss the petition pursuant to FED. R. CIV. P. Rule 12(b)(6), incorporated by FED. R. BANKR. P. Rule 1011. Debtor argues that (1) petitioner lacks standing; (2) petition failed to disclose the transfer of the claim; (3) the involuntary petition requires three creditors; (4) claim is contingent as to amount; (5) petitioner's claim is not enough to satisfy § 303(b) requirements. In the alternative, Debtor requests that the Court require petitioner to post a bond. Additionally, Debtor requests that the Court reserve jurisdiction to allow Debtor to file a motion pursuant to § 303(i).

## DISCUSSION

*I.    Standing/Transfer of Claim*

11 U.S.C. § 303(b)(2) (2010) provides:

> (b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of the title-
> (2) if there are fewer than 12 such holders, excluding any employee or insider of such person and any transferee of a transfer that is voidable under section 544, 545, 547, 548, 549, or 724(a) of

this title, by one or more of such holders that hold in the aggregate at least $15,775 of such claims.

The stated claim of Salinas is a judgment for $336,179. As is evidenced by the material appended by Debtor, Salinas was not the plaintiff awarded judgment in the state court proceeding. Nevertheless, Salinas did not check the box that claimed the claim had been transferred. It thus appears that either Salinas is not a creditor of Debtor or his answer to #12 of the involuntary petition is false (absent Salinas having a separate judgment against Debtor). FED. R. BANKR. P. Rule 1003(a) imposes a requirement to provide written evidence documenting any transfer of a claim to or by a petitioning creditor and this requirement has not been satisfied here. Furthermore, as Debtor notes, the fact that San Angelo was prosecuting a state court civil action against Debtor up until the filing of the involuntary proceeding indicates that it appears it was San Angelo, not Salinas, who was the holder of the claim arising from the state court judgment. In any event, it would appear that either Salinas does not have standing to bring the petition or Salinas failed to comply with FED. R. BANKR. P. Rule 1003(a). Debtor further argues that San Angelo does not have standing to bring an involuntary proceeding either, but that issue is not properly before the Court and will not be addressed.

Salinas has attempted to correct the deficiency by filing an involuntary petition addendum on November 28, 2016, indicating that he is the transferee of the claim and attaching certain transfer documents. While the filing is titled an "addendum," it is more properly characterized as an amendment, because the entire involuntary petition has been refiled. Nevertheless, FED. R. BANKR. P. Rule 1018 states that FED. R. BANKR. P. Rule 7015 (and thus FED. R. CIV. P. 15) apply to contested involuntary petitions, and that "[r]eference in the Federal Rules of Civil Procedure to the complaint shall be read as a reference to the petition." FED. R. CIV. P. Rule 15, governing amendment of the Complaint, states:

(a) Amendments Before Trial.
   (1) Amending as a Matter of Course. A party may amend its pleading once as a matter of course within:
      (A) 21 days after serving it, or
      (B) If the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.
   (2) Other Amendments. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.
   (3) Time to Respond. Unless the court orders otherwise, any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later.

Salinas's opposition contends that his addendum was a timely amendment. Because Debtor's responsive pleading was served on November 2, 2016, Salinas notes that twenty-one days later is November 23, 2016. Pursuant to FED. R. BANKR. P. Rule 9006(f), Salinas contends that three days should be added to the time allowed to extend because service occurred by electronic means.[1] And because three days later is November 26, 2016, a Saturday, Salinas contends that the time to respond is extended until Monday,

---

[1] Effective December 1, 2016, FED. R. BANKR. P. Rule 9006(f) no longer includes electronic means as a service method that extends the time to respond.

- 3 -

November 28, 2016 pursuant to Fed. R. Bankr. P. Rule 9006(a)(1)(C). Salinas filed his addendum on November 28, 2016.

Debtor points out that Fed. R. Civ. P. Rule 15(a)(1)(B) applies only to pleadings in which a responsive pleading is *required*. Fed. R. Bankr P. Rule 1011 states that a debtor "*may* contest the petition" and 11 U.S.C. § 303(d) states a debtor "*may* file an answer to a petition." This language is in contrast to the language of Fed. R. Civ. P. Rule 12, that applies to adversary proceedings, and which states that "A defendant *must* serve an answer," and Fed. R. Bankr. P. Rule 7012, which states "the defendant *shall* serve an answer." Notably, Fed. R. Bankr. P. Rule 1018 incorporates many of the rules governing adversary proceedings. Nevertheless, it omits Fed. R. Bankr. P. Rule 7012, presumably because responsive pleading in involuntary petitions is governed by a separate rule, Fed. R. Bankr. P. Rule 1011. Because Fed. R. Civ. P. references a requirement, yet Fed. R. Bankr. P. Rule 1011 is simply permissive, Salinas cannot rely on Fed. R. Civ. P. Rule 15(a)(1)(B). Salinas made no attempt to seek leave of the Court to amend the petition, and, therefore, the Court determines Salinas cannot rely on Fed. R. Civ. P. Rule 15(a)(2) either. Therefore, the Court will dismiss the petition because either petition lacks standard or petition has failed to comply with Fed. R. Bankr. P. Rule 1003(a).

Notwithstanding dismissal of the petition, the Court addresses the parties' remaining arguments below.

  *II.    Number of Creditors*

11 U.S.C. § 303(b)(1) provides that an involuntary petition must be filed by three or more entities. Section § 303(b)(2) provides an exception, allowing a single entity to file an involuntary petition if there are fewer than twelve creditors who fit the statutory requirements to be a petitioning creditor. Debtor argues that he has twelve or more creditors, and that San Angelos's counsel was aware of that fact.[2]

First of all, a debtor cannot merely state that he has more than twelve creditors in his motion to dismiss. Fed. R. Bankr. P. Rule 1003(b) states:

> If the answer to an involuntary petition filed by fewer than three creditors avers the existence of 12 or more creditors, the debtor shall file with the answer a list of all creditors with their addresses, a brief statement of the nature of their claims, and the amounts thereof. If it appears that there are 12 or more creditors as provided in § 303(b) of the Code, the court shall afford a reasonable opportunity for other creditors to join in the petition before a hearing is held thereon.

It is Debtor's burden to demonstrate that he has twelve or more creditors and he has not, of yet, filed the information required by Rule 1003(b). The purpose of Rule 1003(b) is to allow time for joinder of creditors under § 303(c). Without the information provided by the rule, that opportunity is not sufficiently realizable. Therefore, Debtor cannot rely on the insufficient number of creditors defense without complying with the procedure set forth in the applicable rule.

  *III.    Amount of Salinas's Claim*

---

[2] Note: In this argument, Debtor confused San Angelo with Salinas.

Debtor's next defense is that even if Salinas had standing to file the involuntary petition, the judgment debt does not satisfy the requirements of § 303(b). Debtor misquotes and misinterprets the meaning of § 303(b)(1), which states:

> (b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title-
> (1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount, or an indenture trustee representing such a holder, if such noncontingent, undisputed claims aggregate at least $15,775 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims.

Debtor appears to argue that that the claim must be $15,775 more than the value of all *other* liens on the property, which is incorrect. The statute requires that the holder of the debt be undersecured by at least $15,775. On a motion to dismiss where there is no indication of the fair market value of the property, Debtor's burden has not been satisfied.

### IV.    Bona Fide Dispute

Debtor's final defense is that the claim at issue is subject to a bona fide dispute as to value. Specifically, Debtor questions what produced the $336,179 amount, given that the judgment is for significantly less. Debtor does not seem to argue that there is a bona fide dispute as to liability.

It appears illogical to the Court that a bona fide dispute as to value could render a creditor ineligible to file an involuntary petition when the underlying, undisputed claim exceeds the statutory requirement. Nevertheless, in 2005 BAPCPA added the phrase "liability *or amount*." Since the amendment, courts have been split regarding whether the dispute must be material:

> In making this argument, the creditors essentially ask us to read an implicit materiality requirement into the statutory language "bona fide dispute as to liability or amount." Prior to 2005, some courts had held-as the bankruptcy court held here-that a claim to a disputed amount could nevertheless form the basis of an involuntary petition if the undisputed portion of the claim could independently qualify the creditor. In 2005, however, Congress amended section 303 to add the language "as to liability or amount." Faced with a dearth of clarifying legislative history, courts are more or less evenly split on whether the 2005 amendment was intended to change the prevailing law by establishing that a dispute as to any portion of a claim, even if some dollar amount would be left undisputed, means there is a bona fide dispute as to the amount of the claim, or simply to reinforce the then-prevailing interpretation.

*Fustolo v. 50 Thomas Patton Drive, LLC*, 816 F.3d 1, 9 (1st Cir. 2016) (citations omitted).The Ninth Circuit does not appear to have determined the issue yet. *See In re C&C Jewlry Mfg., Inc.*, 2001 WL 36340326 at *7 (B.A.P. 9th Cir. 2009) ("The Ninth Circuit has not yet interpreted the new language of § 303(b) and (h); however, other courts have held that an objective legitimate dispute as to an amount owed on a petitioning creditor's claim is sufficient to demonstrate a bona fide dispute and forestall a petitioning creditor from maintaining an involuntary petition under § 303(b).).

The Court believes that the better reasoned approach is that the bona fide dispute as to liability must affect whether the claim amount is above or below the statutory requirement. As one treatise asks:

> Why would Congress want to disqualify a creditor whose claim is noncontingent and at least partially *un*disputed? Section 303's requirements regarding type and number of claims are an attempt to balance a debtor's interest in staying out of bankruptcy with the interest of creditors in putting a debtor into bankruptcy. Why shouldn't the undisputed, noncontingent portion of a petitioning creditor's claim count? Why disqualify the creditor in toto? Why effectively bar that creditor's access to the bankruptcy forum?

2 COLLIER ON BANKRUPTCY § 303.11[2] (16th ed.).

*V.    Damages*

11 U.S.C. § 303(i) (2010) states:

> If the court dismisses a petition under this section other than on consent of all petitioners and the debtor, and if the debtor does not waive the right to judgment under this subsection, the court may grant judgment-
>
> (1) against the petitioners and in favor of the debtor for-
>    (A) costs; or
>    (B) a reasonable attorney's fee; or
>
> (2) against any petitioner that filed the petition in bad faith, for-
>    (A) any damages proximately caused by such filing; or
>    (B) punitive damages.

The Court will interpret Debtor's argument as declining to waive the right to judgment and, therefore, will retain jurisdiction to hear a claim for damages under § 303(i).

At the December 7, 2016, hearing, the Court continued the hearing, in part, to permit briefing on the issue of damages under § 303(i). Salinas contends that Section 303(i) only applies after a case is dismissed. The Court agrees: "The plain language of this section requires dismissal before the alleged debtor becomes entitled to damages." *In re Corn-Pro Nonstock Co-op., Inc.*, 317 B.R. 56 (B.A.P. 8th Cir. 2004); *see also In re S. California Sunbelt Developers, Inc.*, 608 F.3d 456, 462 (9th Cir. 2010) ("Fees may not be awarded unless the court dismisses a petition") (quotation omitted); *Higgins v. Vortex Fishing Sys., Inc.*, 379 F.3d 701, 705 (9th Cir. 2004) ("The plain language of the statute presents only two prerequisites for an award of fees, costs, or damages under § 303(i)(1): (1) the court *must have dismissed* the petition on some ground other than consent by the parties . . . ") (emphasis added). Furthermore, FED. R. BANKR. P. Rule 1018 states that FED. R. BANKR. P. Rule 7054 applies to adversary proceedings. FED. R. BANKR. P. RULE 7054(b)(2)(A) incorporates FED. R. CIV. P. Rule 54(d)(2)(A), which requires a claim for attorney's fees to be made by motion.

**CONCLUSION**

The Court HEREBY ORDERS that the motion is GRANTED and the involuntary petition is DISMISSED. The Court retains jurisdiction to hear any request for attorney's fees under § 303(i) upon further motion by Debtor.

IT IS SO ORDERED.

###

Date: February 7, 2017

Mark Houle
United States Bankruptcy Judge